UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

M/V ADMIRAL BULKER                             CIVIL ACTION

VERSUS                                         NO: 16-16215 c/w
                                               16-17745

UNITED BULK TERMINALS DAVANT
LLC ET AL.                                     SECTION: "H"(1)


# ORDER AND REASONS

Before the Court are United Bulk Terminals Davant, LLC's Motion to Dismiss (Doc. 16), Camellia Maritime S.A.'s Motion to Dismiss (Doc. 19), and M/V ADMIRAL BULKER's Motion to Dismiss or Alternatively for Summary Judgment (Doc. 26). For the following reasons, United Bulk Terminals Davant, LLC's and Camellia Maritime S.A.'s Motions to Dismiss are GRANTED. ADMIRAL BULKER's Motion to Dismiss is DENIED.

# BACKGROUND

This consolidated matter arises out of the breakaway of a fleet of barges operated by United Bulk Terminals Davant, LLC ("UBT"). On January 20,

1

2016, at approximately 12:30 p.m. twenty two barges broke away from their moorings at the UBT facility and many drifted into the Mississippi River, blocking navigation. The river was near its maximum height on the day of the incident. The M/V Q JAKE, owned by Q JAKE Shipping ("Q JAKE"), and M/V SERENA P, owned by SERENA P Stefan Patjens ("SERENA P"), were in navigation on the river at the time of the breakaway and were unable to avoid colliding with the drifting barges. The breakaway barges also drifted downriver and struck the anchored M/V OCEAN TOMO. The breakaway barges were owned by Ingram Barge Company ("Ingram"), Canal Barge Company ("Canal Barge"), or Marquette Transportation Company ("Marquette").

In their Complaint, Q JAKE and SERENA P allege that two ships passed the UBT facility prior to the breakaway at an excessive speed and insufficient distance, causing the incident. Specifically, they allege that at 11:50 a.m. the ADMIRAL BULKER, owned by Eurex Bulker S.A. ("Eurex"), passed the UBT facility and at 12:25 p.m. the KOKUKA GLORIOUS ("KOKUKA"), operated by Camellia Maritime S. A. ("Camellia"), passed the UBT facility.

Prior to the institution of this action, UBT demanded security from the ADMIRAL BULKER, believing it to be the responsible party. Q JAKE, SERENA P, the M/V OCEAN TOMO, and Ingram followed suit and demanded security in the form of Letters of Undertaking ("LOU") from the ADMIRAL BULKER. The ADMIRAL BULKER ultimately provided security of nearly $4 million to avoid its arrest.

The ADMIRAL BULKER alleges that this is a case of mistaken identity and that the KOKUKA is at fault for causing the breakaway. It alleges that

because it passed the UBT facility forty minutes before the breakaway, it cannot have been at fault. The ADMIRAL BULKER also argues that UBT negligently moored and secured its fleet, especially in light of the usually high river. On November 9, 2016, Eurex filed a "Verified Complaint and Rule 14 Tender" on behalf of ADMIRAL BULKER *in rem* against UBT, the KOKUKA, and its owners ("the ADMIRAL BULKER Action"). Thereafter, on December 22, 2016, Q JAKE and SERENA P filed an action against UBT, Marquette, Canal Barge, Ingram, the ADMIRAL BULKER and her owner, Eurex, and the KOKUKA and her owner, Camellia ("the Q JAKE and SERENA P Action"). The two actions were consolidated.

In the Q JAKE and SERENA P Action, the parties have brought several cross-claims: UBT, Marquette, and Canal Barge have brought cross-claims against the ADMIRAL BULKER and her owner, Eurex, and the KOKUKA and her owner, Camellia. Ingram has brought a cross-claim against UBT, the ADMIRAL BULKER, Eurex, the KOKUKA, and Camellia. Camellia has brought a cross-claim against UBT, Marquette, ADMIRAL BULKER, and Eurex. Eurex has brought a cross-claim against UBT, the KOKUKA, and Camellia. In addition, the owner of the M/V OCEAN TOMO has intervened in the action.

Before the Court are three Motions to Dismiss. In the first two, UBT and Camellia move for dismissal of the ADMIRAL BULKER Action for lack of subject matter jurisdiction and failure to state a claim. In the third, ADMIRAL BULKER moves for dismissal, or in the alternative summary judgment, of all of the claims and cross-claims against it in the Q JAKE and SERENA P Action. This Court will consider each argument in turn.

# LEGAL STANDARD

## A. Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face."[1] A claim is "plausible on its face" when the pleaded facts allow the court to "draw reasonable inference that the defendant is liable for the misconduct alleged."[2] A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor."[3] The court need not, however, accept as true legal conclusions couched as factual allegations.[4] To be legally sufficient, a complaint must establish more than a "sheer possibility" that the plaintiff's claims are true.[5] If it is apparent from the face of the complaint that an insurmountable bar to relief exists and the plaintiff is not entitled to relief, the court must dismiss the claim.[6] The court's review is limited to the complaint and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.[8]

## B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

A Rule 12(b)(1) motion challenges the subject matter jurisdiction of a federal district court. "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to

---

[1] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

[2] *Id.*

[3] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

[4] *Iqbal*, 556 U.S. at 678.

[5] *Id.*

[6] *Lormand*, 565 F.3d at 255–57.

[8] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

adjudicate the case."[9] In ruling on a Rule 12(b)(1) motion to dismiss, the court may rely on (1) the complaint alone, presuming the allegations to be true, (2) the complaint supplemented by undisputed facts, or (3) the complaint supplemented by undisputed facts and by the court's resolution of disputed facts.[10] The proponent of federal court jurisdiction—in this case, the Plaintiff—bears the burden of establishing subject matter jurisdiction.[11]

**C. Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[12] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[13]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[14] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[15] Summary judgment is

---

[9] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[10] *Den Norske Stats Oljesels kap As v. Heere MacVof*, 241 F.3d 420, 424 (5th Cir. 2001).

[11] *See Physicians Hosps. of Am. v. Sebelius*, 691 F.3d 649, 652 (5th Cir. 2012).

[12] Fed. R. Civ. P. 56(c) (2012).

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[14] *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532 (5th Cir. 1997).

[15] *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995).

appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[16] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[17] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[18] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[19]

## LAW AND ANALYSIS

**A. The ADMIRAL BULKER Action**

In its Complaint, Eurex purports to make a limited appearance under Federal Rule of Civil Procedure E(8) and a tender under Rule 14. UBT and Camellia ("Movants") allege that such an action is procedurally improper and should be dismissed. This Court agrees.

Rule E(8) states that:

An appearance to defend against an admiralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for

---

[16] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).
[17] *John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[18] *Badon v. R J R Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir. 2000) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)).
[19] *Boudreaux v. Banctec, Inc.*, 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

the purposes of any other claim with respect to which such process is not available or has not been served.

Further, Rule 14(c) asserts that:

If a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant or a person who asserts a right under Supplemental Rule C(6)(a)(i) may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences.

As Movants correctly point out, neither of these rules apply to Eurex, the *plaintiff* in this matter. Both speak to actions that can be taken by a *defendant* in a case, either in restricting its appearance or bringing in a third-party it believes is liable for the claims brought against it. Here, Eurex is the plaintiff and thus bringing a claim under the guise of these rules is both illogical and improper.

In defense of its action, Plaintiff Eurex asserts two arguments that essentially amount to (1) "it wasn't sure what else to do," and (2) "it doesn't matter now anyway." The Court is wholly unmoved by these arguments, as Plaintiff provides no law to support them.

First, Plaintiff alleges that after it provided LOU security to UBT and the other parties, it conducted an investigation that revealed that the KOKUKA was actually the last vessel to pass the UBT facility before the breakaway. Upon presenting the other parties with this information, however, they refused to return the LOUs or to pursue claims against the KOKUKA, even as it was returning to the Mississippi River and was available for arrest.

Plaintiff felt it had no "other realistic alternative" but to commence litigation on its own and arrest the KOKUKA. Although the Court appreciates the Plaintiff's quandary, it is a situation of its own making. Plaintiff sets forth no valid reason why it could not have brought an action for Exoneration and Limitation of Liability prior to voluntarily issuing LOUs to UBT and the other parties. It only argues that, had it done so, it would not have been able to arrest the KOKUKA as it was entering this Court's jurisdiction in November 2016. While this may be true, it offers no evidence to suggest that this was the KOKUKA's final voyage into this jurisdiction. In short, Plaintiff had other alternatives. Even if it did not, however, its attempt to bring a claim under the auspices of Rule E(8) and Rule 14 remains improper.

Second, Plaintiff alleges that, in light of the Q JAKE and SERENA P Action, in which several parties have brought claims against it, Movants' argument is now moot. Plaintiff provides no law suggesting that the later filing of a proper lawsuit can retroactively cure the procedurally improper composition of another. Notwithstanding that Eurex and the ADMIRAL BULKER are now defendants in many of the claims brought by parties in the Q JAKE and SERENA P Action, their claims as plaintiff in this suit still remain procedurally improper. Accordingly, the ADMIRAL BULKER Action is dismissed.

### B. The Q JAKE and SERENA P Action

Next, Eurex, on behalf of the ADMIRAL BULKER *in rem*, brings a Motion to Dismiss or Alternatively Motion for Summary Judgment arguing for the dismissal of all of the claims against it. Despite its title, this Motion can only be interpreted as a Motion for Summary Judgment. Eurex provides

extensive evidence and exhibits to support its argument that it cannot be at fault for the barge breakaway. It cannot be seriously argued that Q JAKE, SERENA P, and all of the cross-claimants have not adequately plead a claim of negligence against Eurex and the ADMIRAL BULKER. Each has alleged that the ADMIRAL BULKER passed too closely to the UBT facility at a high rate of speed, violating its duty under the Inland Navigation Rules, damaging components of UBT's mooring devices, and causing the barge breakaway. Indeed, Eurex's arguments focus on the sufficiency of the evidence, not the sufficiency of the claims plead. Accordingly, this Court will consider this Motion under a summary judgment standard.

Eurex argues that there are three undisputed facts in this litigation that entitle it to judgment in its favor: (1) the ADMIRAL BULKER passed the UBT facility at 11:50 a.m.; (2) the KOKUKA passed the UBT facility at 12:25 p.m.; and (3) the UBT breakaway occurred at 12:30 p.m. Eurex argues that because the ADMIRAL BULKER passed 40 minutes before the breakaway and was not the last ship to pass the UBT facility prior to the breakaway, it therefore cannot be at fault. UBT, Ingram, Camellia, Q JAKE, and SERENA P, filing separate oppositions, raise objections to this argument that the Court finds compelling.

Chiefly, this Court finds this summary judgment motion premature. As the Motion's opponents point out, this case is in its infancy and no discovery has yet taken place. The parties have identified certain questions, which further discovery may reveal to be material issues of fact. For instance, there is considerable debate over the implications of the testimony of eye witness Bill Ray Brooks. In a declaration attached to Eurex's motion, Mr. Brooks declares

that the wake from a vessel passing at a high rate of speed at about 12:27 p.m. caused the breakaway, implicating the KOKUKA. In his interview with UBT counsel, however, he stated that the vessel was northbound, implicating the ADMIRAL BULKER. The Motion's opponents also point out that it is not undisputed that the breakaway occurred at 12:30 p.m., as Eurex contends. Although the barges began to drift into the river at approximately 12:30 p.m., it is "more than plausible that the lines broke sometime between approximately 11:50 a.m. and 12:30 p.m."[20] Further discovery is needed to resolve these issues of fact and summary judgment is therefore inappropriate at this stage.[21] This Court will entertain a renewed Motion for Summary Judgment from Eurex after the necessary discovery has been completed.

## CONCLUSION

For the foregoing reasons, UBT's and Camellia's Motions to Dismiss are GRANTED, and ADMIRAL BULKER's claims against UBT and Camellia in matter 16-16215 are DISMISSED WITH PREJUDICE. ADMIRAL BULKER's Motion to Dismiss the claims against it in the consolidated matter, 16-17745, is DENIED.

New Orleans, Louisiana this 28th day of June, 2017.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[20] Doc. 29, p. 4.
[21] *See* Fed. R. Civ. Pro. 56(d).